UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____-CIV-_____/_____

LINDSAY COLUMBO, an individual,

     Plaintiff,

vs.

ESPEAR, LLC, a Delaware Limited Liability Company,
BORIS TIOMKIN, individually, and
JAMES GREENBERG, individually,

     Defendants.

_____/

## **COMPLAINT**

1.    Plaintiff, LINDSAY COLUMBO (hereinafter "Plaintiff" and "COLUMBO"), is a female individual residing in Miami Dade County, Florida.

2.    At all times material to this Complaint, Defendant, ESPEAR, LLC, Delaware Limited Liability Company, has provided technology and compliance products and services to support customers for anti-money laundering, know your customer, and anti-corruption compliance initiatives, with *all* of ESPEAR, LLC's employees being comprised of remote workers based at locations in Florida (approximately three (3) employees), Pennsylvania (approximately five (5) employees), New York (four (4) employees), and Washington, D.C./Virginia (two (2) employees)—as well as in California (one (1) employee), Alaska (one (1) employee), and the United Kingdom (one (1) employee).

3.    Defendants, BORIS TIOMKIN, Executive Chairman of ESPEAR, LLC, and JAMES GREENBERG, Vice-Chairman & Chief Executive Officer (CEO) of ESPEAR, LLC, have at all times material to this Complaint owned and managed ESPEAR, LLC and Defendants

TIOMKIN and GREENBERG regularly exercised the authority to hire and fire employees including Plaintiff, determined the manner in which Plaintiff and other employees were compensated, participating in setting the rates of pay of Plaintiff and other employees, and/or controlled the finances and day-to-day management operations of ESPEAR, LLC.  By virtue of such control and authority, Defendants TIOMKIN and GREENBERG each constitute an employer of Plaintiff as defined by the Equal Pay Act (EPA)-Fair Labor Standards Act (FLSA), 29 U.S.C. §203(d).

4.     Plaintiff was an employee of ESPEAR, LLC and brings this action against ESPEAR, LLC, BORIS TIOMKIN, and JAMES GREENBERG (hereinafter collectively referred to as "Defendants" and "eSpear"), for wage discrimination violations of the EPA, 29 U.S.C. §206(d) *et seq.*, the FLSA, 29 U.S.C. §201 *et seq.*, as well as for alleged retaliation against Plaintiff in violation of the EPA-FLSA, 29 U.S.C. §215.

5.     Jurisdiction is conferred on this Court by 29 U.S.C. §206(d) & §216(b) and 28 U.S.C. §1337.

6.     All of the events, or a substantial part of the events, giving rise to this action, occurred in Miami-Dade County, Florida within the jurisdiction of the United States District Court for the Southern District of Florida, Miami Division.

7.     At all times material to this Complaint, ESPEAR, LLC was an "employer" of Plaintiff within the meaning of 29 U.S.C. §203(d).

8.     At all times material to this Complaint, ESPEAR, LLC was an "enterprise" within the meaning of 29 U.S.C. §§203(s)(1)(B) and (s)(1)(C).

9.     More specifically, at all times material to this Complaint including but not necessarily limited to during the years 2017, 2018, and 2019, ESPEAR, LLC had two (2) or

more employees who have regularly sold, handled, or otherwise worked on goods and/or materials that have been moved in or produced for commerce.  In this regard, Plaintiff alleges based upon information and belief and subject to discovery, that at all times material to this Complaint including but not necessarily limited to during the years 2017, 2018, and 2019, ESPEAR, LLC employed two (2) or more employees who, *inter alia*, regularly handled and worked and/or sold goods and/or materials moved in or produced for commerce including, by way of example: (a) handled and worked with computers, copy machines, scanners, and telephones, all of which were goods and/or materials moved in or produced for commerce; (b) commercial office supplies—including but not limited to paper, pens, and UPS, and FedEx—that were goods and/or materials moved in or produced for commerce; and (c) regularly processed bank and/or other electronic transfers between multiple States across the United States such as Connecticut, Pennsylvania, and Oklahoma, as well as to countries outside the U.S. including but not necessarily limited to the United Kingdom.

10.    Based upon information and belief, the annual gross sales volume of ESPEAR, LLC has been in excess of $500,000.00 per annum at all times material to this Complaint, including but not necessarily limited to during the years 2017, 2018, and 2019.

11.    At all times material to this Complaint including but not necessarily limited to during the years 2017, 2018, and 2019, ESPEAR, LLC was an enterprise engaged in interstate commerce or in the production of goods for commerce as defined by 29 U.S.C. §203(s).

12.    In or around June 2017, Plaintiff was hired by eSpear in the dual positions of "Global Vice President of Compliance & Support Services" and "General Counsel" based in Miami Beach, Florida with compensation that included (a) a salary of $150,000 per year; (b) One Percent (1%) of all gross sales pursuant to a management override incentive plan; (c) a monthly

stipend of $300.00 for supplies, plus employee benefits, as well as an equity (ownership) interest in ESPEAR, LLC.

13.     In addition to her work as "Global Vice President of Compliance & Support Services" and "General Counsel" for eSpear, in January 2018 Plaintiff also took on additional duties and responsibilities for Defendants in the role of "Global Vice President of Sales."

14.     Between approximately August 2017 and December 2019, Plaintiff satisfactorily performed her duties for eSpear, during which time Defendants paid Plaintiff a salary of $150,000 per year.

15.     However, between approximately August 2017 and December 2019, Defendants paid similarly situated male employees to Plaintiff, a female employee, at a higher rate of pay than Defendants paid Plaintiff for performing essentially the same work, including: (a) Chandra Mouli, a male employee in the position known as "Chief Technology Officer," who based upon information and belief was paid a salary of approximately $200,000 per year or more plus equity in eSpear; (b) Patrick Brannen, a male employee in the position known as "Global Vice President of Development & Operations," who based upon information and belief was approximately $200,000 per year or more plus equity in eSpear; and (c) Keith Fritz, a male employee in the position known as "Head of Product Development," who was paid a salary of approximately $200,000 per year or more plus equity in eSpear —all despite Plaintiff, a female employee, performing work that was equal and/or comparable or greater to the work to Messrs. Mouli, Brannen, and Fritz.

16.     Accordingly, throughout Plaintiff's employment with eSpear between approximately August 2017 and December 2019, Chandra Mouli, Patrick Brannen, and Keith Fritz, male employees, performed substantially the same or similar duties to the duties that

4

Plaintiff performed for eSpear, but Defendants paid Messrs. Mouli, Brannen, and Fritz at a higher rate of pay than Defendants paid Plaintiff for performing essentially the same work.

17.     Subject to discovery, based upon Plaintiff being owed unpaid wages of approximately $961.54 per week [approximately $50,000 annually] as a result of eSpear's unlawful gender discrimination, Plaintiff's unpaid wages during approximately One Hundred and Twenty (120) weeks between August 2017 and December 2019 total approximately **$115,384.62** [$961.54/week x 120 weeks = $115,384.62].

18.     Based upon information and belief, the complete records of all of the wages paid by eSpear to Plaintiff and the similarly situated male employees between August 2017 and December 2019 and the present are in the possession, custody, and/or control of Defendants.

19.     On or around November 1, 2019, Defendant GREENBERG—one of the founders and initial capital investors of eSpear—called Plaintiff to discuss GREENBERG becoming eSpear's Chief Executive Officer (CEO).

20.     During Plaintiff's first call with Defendant GREENBERG when he became eSpear's CEO, GREENBERG emphasized to Plaintiff that he only cared about two (2) things: (i) wealth; and (ii) investors.

21.     Over approximately the next two (2) weeks throughout early-to-mid November 2019, Defendant GREENBERG called Plaintiff several times per day for various work reasons.

22.     On or around the evening of November 11, 2019, Defendant GREENBERG again called Plaintiff and informed her that Defendants hired Chandra Mouli as the Company's "Co-Head of Development Operations," a male individual who had previously worked for eSpear as "Chief Technology Officer" until Mouli's prior employment had been terminated purportedly because of budgetary issues.

23.     Significantly, during Plaintiff's evening call with Defendant GREENBERG on or around November 11, 2019, Plaintiff requested a formal performance review from eSpear and an increase in Plaintiff's salary in light of the disparity in Plaintiff's compensation compared to similarly situated male employees of eSpear who were being paid more compensation than Plaintiff for substantially the same or similar—if not *lesser*—duties to the work Plaintiff was performing for Defendants.

24.     More specifically, Plaintiff reported to Defendant GREENBERG on or around November 11, 2019 what COLUMBO in good faith believed was gender discrimination by eSpear because of, *inter alia,*  the disparity in compensation paid to Plaintiff in comparison to male employees who were paid significantly more than Plaintiff including: (a) Chandra Mouli; (b) Patrick Brannen—who, like Plaintiff, had three (3) to four (4) employees reporting to him and (c) Keith Fritz, eSpear's "Head of Product Development" a male employee who was not an executive in the Company, despite Plaintiff performing substantially the same or similar duties as male employees.

25.     Towards the conclusion of Plaintiff's evening call with Defendant GREENBERG on or around November 11, 2019, GREENBERG asked Plaintiff if she would join him in Key Largo, Florida for Thanksgiving while telling Plaintiff that: (a) GREENBERG's wife would be out of the country over the holiday; and (b) Plaintiff should "bring a bathing suit."  Similarly, a few days later, on or around November 13 2019, GREENBERG called Plaintiff and again invited her to travel to Key Largo with GREENBERG over Thanksgiving while also suggesting to Plaintiff that GREENBERG could "drive up to Miami" one night from Key Largo so that he could see Plaintiff.  However, Plaintiff rejected Defendant GREENBERG's overtures.

26.     Despite Plaintiff's mid-November 2019 internal gender discrimination complaint to Defendants, eSpear failed to take corrective action to remedy Defendants' unlawful compensation practices with respect to the disparity in Plaintiff's compensation in comparison to Defendants' male employees.

27.     Likewise, between approximately mid-November 2019 and early December 2019, Defendants began subjecting Plaintiff to retaliation and Defendant GREENBERG effectively refused to communicate with Plaintiff for several weeks despite GREENBERG regularly communicating with male employees of eSpear throughout this time period.

28.     Notably, the only call Plaintiff received from Defendant GREENBERG between approximately mid-November 2019 and mid-December 2019 occurred on or around Friday, November 22, 2019, when Defendant GREENBERG called Plaintiff in the evening—after Plaintiff had e-mailed GREENBERG earlier that day in an effort to address work issues that been accumulating without responsive communication from GREENBERG—but despite a brief voicemail Plaintiff received from GREENBERG, when Plaintiff called GREENBERG back approximately Fifteen (15) minutes after receiving his message, she was unable to reach GREENBERG and had to a leave him a voicemail.

29.     On December 13, 2019, Plaintiff submitted another internal complaint to Defendants, specifically to Jonathan Arnold who was then eSpear's Chief Technology Officer, in which Plaintiff reported her good faith allegations of gender/sex discrimination, harassment, and retaliation to Defendants' upper management.  See Exhibit A.[1]

30.     On December 16, 2019, Plaintiff submitted a third discrimination-retaliation complaint, see Exhibit B, as a result of the alleged gender/sex discrimination, harassment, and

---

[1] In Plaintiff's December 13, 2019 internal complaint, Plaintiff had an inadvertent, scrivener's error wherein she wrote "Key West" instead of "Key Largo."

retaliation that Plaintiff in good faith believed was ongoing by eSpear without remedial action being taken by Defendants, which complaint Plaintiff directed to eSpear's corporate attorney, Dan Schulman, Esquire of The Schulman Law Firm LLP, because Jonathan Arnold had instructed Plaintiff to communicate with Schulman after Arnold received Plaintiff's December 13, 2019 discrimination complaint.

31.     On December 18, 2019, Defendant TIOMKIN along with eSpear's corporate attorney, Dan Schulman, Esquire, notified Plaintiff that her employment with eSpear was terminated purportedly because Defendants had no money and eSpear was most likely going to be wound up and close operations.

32.     Defendants' termination of Plaintiff's employment on December 18, 2019 was in retaliation for and was because of Plaintiff's gender discrimination complaints and constitutes unlawful retaliation in violation of 29 U.S.C. §215.

33.     The fact that Plaintiff engaged in activity protected by the EPA-FLSA was a motivating factor in Defendants' termination of Plaintiff's employment on December 18, 2019, in violation of 29 U.S.C. §215.

34.     The reason proffered by Defendants on December 18, 2019 for the termination of Plaintiff's employment was false and known to be false at the time Defendants terminated Plaintiff's employment and instead was a pretext for unlawful discrimination and retaliation against Plaintiff in violation of 29 U.S.C. §215.

## COUNT I – WAGE VIOLATIONS OF THE EQUAL PAY ACT

Plaintiff, LINDSAY COLUMBO, reasserts and reaffirms the allegations of Paragraphs 1 through 34 as if fully set forth herein and further states that this is an action against ESPEAR,

LLC, BORIS TIOMKIN, and JAMES GREENBERG for violations of the Equal Pay Act, 29 U.S.C. §206 *et seq*.

35.     The Fair Labor Standards Act (FLSA), 29 U.S.C. §201 *et seq.* applies to employers and enterprises engaged in interstate commerce, 29 U.S.C. §§203(d), (s)(1)(B) and (s)(1)(C), including Defendants, ESPEAR, LLC, BORIS TIOMKIN, and JAMES GREENBERG.

36.     The Equal Pay Act (EPA) is incorporated into the FLSA at 29 U.S.C. §206 and provides:

> "No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex/gender by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex/gender in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to
>
> (i) a seniority system;
> (ii) a merit system;
> (iii) a system which measures earnings by quantity or quality of production; or
> (iv) a differential based on any other factor other than sex/gender: *Provided*, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee."

29 U.S.C. §206(d)(1).

37.     During the three (3) year statute of limitations period between August 2017 and December 2019, Plaintiff performed the following jobs for eSpear: (a) "Global Vice President of Compliance & Support Services"; (b) "General Counsel"; and (c) "Global Vice President of Sales."

38.     Between August 2017 and December 2019, Plaintiff's performance of her duties for eSpear in the positions of "Global Vice President of Compliance & Support Services," "General Counsel," and "Global Vice President of Sales" required Plaintiff to exercise similar skill, effort and responsibility as male employees—including but not necessarily limited to Chandra Mouli, Patrick Brannen, and Keith Fritz—who were similarly situated and/or performed the same or similar positions and/or duties.

39.     In numerous work weeks during the three (3) year statute of limitations period between August 2017 and December 2019, eSpear willfully paid Plaintiff less wages than Defendants paid to similarly situated male employees—including but not necessarily limited to Chandra Mouli, Patrick Brannen, and Keith Fritz—because of Plaintiff's gender/sex, female, for equal work which Plaintiff performed for Defendants, in violation of 29 U.S.C. §206(d)(1).

40.     Between August 2017 and December 2019, eSpear willfully violated the EPA and FLSA, 29 U.S.C. §206(d)(1), by intentionally paying Plaintiff less wages than Defendants paid similarly situated male employees, all because of Plaintiff's gender/sex, female, for equal work which Plaintiff performed for eSpear in comparison to similarly situated male employees of Defendants.

41.     Defendants' violations of 29 U.S.C. §206(d)(1) were intentional and were done with malice and reckless disregard for Plaintiff's rights as guaranteed under the laws of the United States of America.

42.     Plaintiff has suffered and continues to suffer loss of earnings, emotional distress, loss of self-esteem and other injuries as a direct result of Defendants' violations of 29 U.S.C. §206(d)(1).

43.     During every work week and/or pay period that occurred between August 2017 and December 2019 in which eSpear paid Plaintiff less wages than similarly situated male employees of Defendants because of Plaintiff's gender/sex, female, Defendants violated 29 U.S.C. §206(d)(1), such that each paycheck Plaintiff received from eSpear between August 2017 and December 2019 constituted a continuing violation of the FLSA and the EPA.

44.     Pursuant to 29 U.S.C. §216(b), Plaintiff is entitled to an award of liquidated damages from eSpear in an amount equal to all wages, salary, and other compensation wrongfully denied to or lost by Plaintiff by reason of Defendants' violations of 29 U.S.C. §206(d)(1).

45.     Plaintiff has retained the undersigned counsel to represent her in this action, and pursuant to 29 U.S.C. §216(b), Plaintiff is entitled to recover from Defendants all reasonable attorneys' fees and costs incurred as a result of Defendants' violations of the EPA-FLSA.

WHEREFORE, Plaintiff, LINDSAY COLUMBO, demands judgment against Defendants, jointly and severally, ESPEAR, LLC, BORIS TIOMKIN, and JAMES GREENBERG, for back pay, employment benefits, other compensation including bonuses, liquidated damages, compensatory damages, including, but not limited to, damages for mental anguish, loss of dignity, and any other intangible injuries, equitable relief, interest, costs, attorney's fees, expert fees and such other and further relief as this Honorable Court deems proper.

### COUNT II
### RETALIATION IN VIOLATION OF THE EQUAL PAY ACT-FAIR LABOR STANDARDS ACT

Plaintiff, LINDSAY COLUMBO, reasserts and reaffirms the allegations of Paragraphs 1 through 34 as if fully set forth herein and further states that this is an action against ESPEAR,

LLC, BORIS TIOMKIN, and JAMES GREENBERG for Retaliation in violation of the Equal Pay Act-Fair Labor Standards Act, 29 U.S.C. §215.

46.     The Fair Labor Standard Act (FLSA) defines "employee" as "any individual employed by an employer." 29 U.S.C. §203(e)(1).

47.     The FLSA also defines "employer" as including "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C.§203(d).

48.     At all times material to this Complaint between approximately August 2017 and December 2019, Plaintiff was an employee of ESPEAR, LLC,  BORIS TIOMKIN, and JAMES GREENBERG as defined by 29 U.S.C. §203(e)(1).

49.     At all times material to this Complaint between August 2017 and December 2019, ESPEAR, LLC,  BORIS TIOMKIN, and JAMES GREENBERG each were an employer and/or joint employer of COLUMBO as defined by 29 U.S.C. §203(d).

50.     The FLSA-EPA's anti-retaliation provisions at 29 U.S.C. §215(a) provide that "it shall be unlawful for any person—(3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act…"

51.     When Plaintiff began complaining in good faith to Defendant GREENBERG in November 2019, and when Plaintiff made further internal complaints to Defendants between November 2019 and December 2019—including but not necessarily limited to Plaintiff's written complaints submitted on December 13, 2019 and December 16, 2019—about alleged gender discrimination, harassment, and retaliation, Plaintiff engaged in activity protected by the EPA-FLSA, 29 U.S.C. §215.

52.     Defendants undertook retaliatory action against Plaintiff in violation of 29 U.S.C. §215(a)(3) because of Plaintiff's objections to and complaints about alleged gender discrimination, culminating in Defendants unlawfully terminating Plaintiff's employment on December 18, 2019 because of her gender discrimination complaints, in violation of 29 U.S.C. §215(a)(3).

53.     Plaintiff's good faith objections about and gender discrimination complaints between November 2019 and December 2019 were a motivating factor behind eSpear's unlawful retaliation against Plaintiff and Defendants' unlawful termination of Plaintiff's employment on December 18, 2019, in violation of 29 U.S.C. §215(a)(3).

54.     Defendants' termination of Plaintiff's employment on December 18, 2019 was in retaliation for and was because of Plaintiff's gender discrimination complaints and constitutes unlawful retaliation in violation of 29 U.S.C. §215.

55.     When Defendant TIOMKIN and eSpear's corporate attorney, Dan Schulman, Esquire, notified Plaintiff on December 18, 2019 that her employment with eSpear was terminated purportedly because Defendants had no money and eSpear was most likely going to be wound up and close operations., the reason proffered by Defendants for the termination of Plaintiff's employment was false and known to be false and instead was a pretext for unlawful discrimination and retaliation against Plaintiff in violation of 29 U.S.C. §215.

56.     Defendants' violations of 29 U.S.C. §215(a)(3) were intentional and done with malice and reckless disregard for Plaintiff's rights under the FLSA.

57.     Plaintiff has suffered lost wages, emotional distress, loss of self-esteem, and other injuries and damages as a direct result of Defendants' violations of 29 U.S.C. §215(a)(3).

58.     Plaintiff has retained the undersigned counsel to represent her in this action, and pursuant to 29 U.S.C. §216(b), Plaintiff is entitled to recover from Defendants all reasonable attorney's fees and costs as a result of Defendants' violations of 29 U.S.C. §215.

WHEREFORE, Plaintiff, LINDSAY COLUMBO, demands judgment against Defendants, jointly and severally, SPEAR, LLC, BORIS TIOMKIN, and JAMES GREENBERG, for back pay, employment benefits, compensatory damages including, but not limited to, damages for intangible injuries, equitable relief including but limited to reinstatement or front pay, injunctive relief, interest, attorneys' fees, costs, and such other and further relief as this Honorable Court deems proper.

## JURY TRIAL DEMAND

LINDSAY COLUMBO demands trial by jury on all issues so triable.


Dated:  January 30, 2020                    Respectfully submitted,

                          By:     **KEITH M. STERN**
                                  Keith M. Stern, Esquire
                                  Florida Bar No. 321000
                                  E-mail:  employlaw@keithstern.com
                                  LAW OFFICE OF KEITH M. STERN, P.A.
                                  80 S.W. 8th Street, Suite 2000
                                  Miami, Florida 33130
                                  Telephone:  (305) 901-1379
                                  Attorneys for Plaintiff

# EXHIBIT A

On Dec 13, 2019, at 11:13, Lindsay Columbo <lcolumbo@espear.com> wrote:

Dear Jonathan,

I would like to discuss several serious matters, including sexual harassment, gender discrimination and hostile work environment perpetrated by Boris Tiomkin and James Greenberg. Can you please make an introduction by the end of business today, or should I contact him directly?

<u>Below is a synopsis of just a few specific instances</u>:

1) On November 1, 2019, Greenberg called me to celebrate him becoming CEO of eSpear. After that call, on most days between November 1 and November 11, he called me several times a day to collaborate on work issues and discuss both his and my roles. On November 11, Greenberg called me in the evening. During that call, Greenberg mentioned that eSpear had just rehired Chandra, who was terminated on October 31, 2019 due to budget concerns. I asked Greenberg for a performance review and adjustment to my salary. (Though I was hired to be the Global VP of Compliance & Support and General Counsel, I also took on the role of Global VP of Sales in January 2018). Greenberg asked me if I am giving him an "ultimatum." I said "no" and explained that I'm paid significantly less than Patrick even though he is my peer (we are both Global VPs), we both have 3-4 people reporting to us, and I too am a valuable member of the eSpear management team as evidenced by Greenberg's present discussions with me. I also pointed out that both Chandra and Keith (non-executive) were being paid significantly more than me. Greenberg then asked me if I wanted a raise or equity--and I told him I didn't have enough information on the value of the equity to make an intelligent decision. He said "I will bring this to the board."

2) At the close of the November 11 call, Greenberg asked me to join him for Thanksgiving in Key West. He told me that his wife would be out of the country and that I should bring a bathing suit. A few days later, again Greenberg asked me to join him for Thanksgiving and offered to drive up to Miami one evening to see me. I responded "Thank you, but I will be celebrating with my family." After that call, he gave me the silent treatment: he refused to follow-up with phone calls, emails or text messages for 21 consecutive days. During those 21 days, while I was receiving the silent treatment, Greenberg talked to every single male employee. In fact, over the next month, I received only 1 phone call from Greenberg in an attempt to continue our previous discussions. This call came in after work hours on a Friday evening. When I called Greenberg back only 15 minutes later, he did not answer and made no attempt to return my call. He still rarely communicates with me making it impossible to do my job.

3) Yesterday, Boris Tiomkin sent me a hostile and threatening email (see below) over me having "founder" in my LinkedIn profile. My LinkedIn profile hasn't changed since November 2017. This is the first communication I received from Tiomkin since November 7, 2019. He too rarely communicates with me, making it difficult to do my job.

There are more instances and examples including a general culture led by Greenberg and Tiomkin that is hostile to women, including only women being terminated, women employees being paid less than male employees, and female employees being treated differently with both open hostility and the silent treatment. For example, just 3 days ago, Greenberg made a female employee cry and then told her not to tell anybody about the conversation.

Please let me know if you are going to make the introduction to David Gelber. If I do not hear from you by the end of the business day today, I will contact ▮▮▮▮▮▮▮ myself.

Thank you for your prompt attention to this matter.

Sincerely,

*Lindsay Columbo, Esq.*
**Global Vice President, Compliance & Support Services**
***eSpear LLC***
Phone:     +1-561-706-0853
Email:      lcolumbo@espear.com
Website:   www.espear.com
Blog:        http://blog.espear.com/

REDACTED

**Boris Tiomkin**                                                                              Thu, Dec 12, 3:45 PM (15 hours ago) 

to James, Lindsay


Lindsay,

I fundamentally don't care about what James Hughes told you. And I'm certainly not aware of any work you did prior to the launch. I'm, however, aware of what Keith, Chandra and Patrick did - they created software. Janes Greenberg and I contributed significant amounts of capital. This is what constitutes founding a firm.

I cannot force you to change your profile. But in the future when you move on and I'm asked for a reference, I will not confirm this.  This may cause a major embarrassment  to a young professional as yourself.


Regards,

Boris
US +1 ███████

Sent from my iPhone

Please forgive any typos and autocorrects.

> On Dec 12, 2019, at 14:50, Lindsay Columbo <LColumbo@espear.com> wrote:
>
> 
>
>
>
> Boris,
>
> The LinkedIn profile is accurate.
>
> In recognition of work I did in early 2017, James Hughes gave me permission to put that on my profile. I am just as much a founder as James, Jonathan, Patrick, Keith and Chandra.
>
>
> Best,
> *Lindsay Columbo, Esq.*
> **Global Vice President, Compliance & Support Services**
>
> **eSpear LLC**
> Phone:   +1-561-706-0853
> Email:    lcolumbo@espear.com
> Website:  www.espear.com
> Blog:     http://blog.espear.com/
>
> On Thu, Dec 12, 2019 at 11:16 AM Boris @eSpear <btiomkin@espear.com> wrote:
>> Hi Lindsay,
>>
>> I got a call from one of our investors who saw your LinkedIn profile asking me if you really are a co-founder of eSpear. I checked Arnold's, Hughes's, Greenberg's and my own profile and no one claims to be a co-founder of eSpear. All four of us could actually claim that but none did. Also Patrick, Keith and Chandra and maybe others have started working at eSpear before you, and none claim to be co-founders of eSpear. I had to tell our investor that you are in effect started working at eSpear a few months after it was launched. This situation is a bit odd, so I have to ask you to correct your LinkedIn profile to reflect your true status at the firm.
>>
>>
>> Thank you
>>
>>
>> Regards,
>>
>>
>> Boris Tiomkin
>>
>> eSpear, LLC
>>
>> Executive Chairman
>>
>>
>> www.espear.com
>>
>> +1 ██████

REDACTED

# EXHIBIT B

Dear Dan,

Please be advised that Frances Amador who directly reports to me on the Support Team, informed me of a phone call she received from James Greenberg on 12/13/19. This phone call came after I sent my email to Jonathan on Friday.

Prior to that call, Frances had only received 1 phone call from Greenberg since he became CEO. That phone call was received during the week of 11/4/19.

When Greenberg called Frances on 12/13, he provided her with a high-level update of opportunities, including how █████████ would begin white labelling eSpear's products. This is information that even I have not yet heard of.

In addition, Greenberg told Frances that he wanted to get involved in ██████ account and take the lead on a call with her next week. He directed her that I did not need to be on the call and left me out of the conversation.

As background, I have led the charge and communications with Frances ███████ since early 2018 and assisted in closing the deal as well as overseeing all of their follow-up inquiries and implementation efforts. They are one of our largest customers. When Greenberg took over as CEO, I directed my team accordingly to include him on all emails and all initiatives per his instructions. I did the same. One of these efforts involved my and Frances offering to introduce Greenberg to the ██████ team and invited him to several follow-up discussions we were scheduled to have. He did not reply to a single one of my emails on this topic. Frances attempted several times to get a response from Greenberg on ██████████████████████. Greenberg remained unresponsive until his call to Frances on 12/13. Below is an example of one of these email exchanges.

Not only did Greenberg suddenly discuss leading the charge with ██████ without me during the 12/13 call with Frances, but also, he mentioned killing the deal entirely, a topic which has never been brought to my attention.

With respect to ████ I played an integral role in the ████ relationship since early 2018 through Nov. 11, 2019. For example, I put together and executed training for the entire ████ sales team. I also worked directly with ████ to provide continuous BSA/AML compliance support for major ████ TAM countries and was involved and provided feedback on original UI and traffic light discussions with the ████ team. I always participated in calls held twice a week with the team, and on several occasions, I was directed to lead those meetings with the ████ team. Frances also worked closely with me on ████ training and support efforts and was also invited to these calls.

The week of 11/18/19, I noticed no one was attending the usual ████ calls. I also noticed that a new calendar invitation had been established for weekly meetings with ████ to begin the following week at a new day and time. Neither myself nor Frances were informed of or invited to this new recurring call. However, all of the same ████ members were invited and Greenberg (meeting organizer), added Patrick, Keith and Chandra.

On 11/21/19, I sent an email to Greenberg asking if the old meetings with ████ were still going on and asked him about the new recurring meeting.

He responded to me with only 1 word: "cancelled."

During our conversations between Nov. 1 and Nov. 11, 2019, Greenberg continued to tell me what a great job I was doing. He was complimenting me on my knowledge of our customers, products and industry. He even told me twice that he wanted to put me in front of the Board. That all changed after Nov. 11, 2019.

Greenberg is retaliating against me for the issues I raised in my email on Friday; this is further evidence that he is making it impossible for me to do my job.

Best,

REDACTED

*Lindsay Columbo, Esq.*

**Global Vice President, Compliance & Support Services**

*eSpear LLC*

Phone:      +1-561-706-0853
Email:      lcolumbo@espear.com
Website:    www.espear.com
Blog:       http://blog.espear.com/

**Frances Amador**                                          Thu, Nov 14, 4:00 PM

to me, James, Taylor, Patrick, Support

Hello Team,

The following is a status update on the ███ account.

I'll be referencing 2 separate matters: First, new venture discussion with ████ ████ ████ ████ ████ ████ ██ ██ ███ ███ ███ ███ ███ ███ at ███ And lastly, Spear ID Implementation timeline status.

**New Venture Discussion:**

Follow-up call with ███ and ███ has been moved to Friday, November 29th at 9 am EDT. The meeting was postponed from Oct 31st to 11/29, as they were waiting on clarification on some matters from the regulatory body in Cyprus. ███ has confirmed the meeting for this Friday 29th. Lindsay C., and I will be joining this call.

James, I'll add you to the meeting invitation in the event you'll like to join us. Lindsay will lead the call, as we anticipate legal matters to be discussed which may include contract details etc. Kindly advise so that we may plan accordingly. Thank you.

██████ **Spear ID Implementation timeline:**

The last update reported relates to SDK solution/software (image recognition) inquiry from ███ ██████ █████ ████ at ████ Per Patrick ███ inquired about SDK for them to use to check an ID prior to attempting to parse it.

We don't currently have anything like that, so it would take some development effort on our part. Patrick and rest of DevOps to discuss this further with James Greenberg. Please let me know if there's anything else I can do to help.

In the meantime, I'm reaching out to the technical team/Project Management folks at ████ to get a status update on Spear ID implementation timeline.

Please advise if you have questions regarding the above-referenced matters.

Regards,

*Frances Amador, CAMS*

**Customer Service Representative**

*eSpear LLC*

Phone:      +1-803-226-8499
Email:      famador@espear.com
Website:    www.espear.com
Blog:       http://blog.espear.com/



**Lindsay Columbo <lcolumbo@espear.com>**                    Fri, Nov 15, 11:55 AM

to Frances, James, Taylor, Patrick, Support

Frances,

REDACTED

First, I just want to thank you for putting these updates together and keeping everyone in the loop.

I will be on the **New Venture call** on 11/29. To further your summary-- ██████ has decided they would like to use eSpear (Spear Watch and Spear ID) for a new entity they are forming. Last time we spoke, they were in the process of finalizing the paperwork needed for the entity's formation. I am hopeful to hear new updates on our upcoming call so we can get the MSA in place. We do not yet have volumes for this new entity.

James--as Frances mentioned, we are happy to have you on the call and introduce you to the ██████ team! If you are unable to make it, we will be sure to circulate an update after the call.

For the **Spear ID implementation timeline**--let me know if I can assist in any way.


Best,

*Lindsay Columbo, Esq.*
**Global Vice President, Compliance & Support Services**

**eSpear LLC**
Phone:      +1-561-706-0853
Email:      lcolumbo@espear.com
Website:    www.espear.com
Blog:       http://blog.espear.com/



---



**Regina Brannen**                                                                                     Fri, Nov 15, 1:16 PM

to me

Let me know if/when it will be helpful for me to do a training on Spear ID for the ██████ team .

Best,

Regina

REDACTED